**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

MICHAEL E. JACKSON,
ADC #88412                                                                                    PLAINTIFF

V.                               NO. 5:16-CV-29-BD

ESTELLA BLAND, et al.                                                              DEFENDANTS

<u>**ORDER**</u>

**I.     <u>Background</u>**

In this lawsuit, Michael Jackson, an Arkansas Department of Correction ("ADC") inmate, claims that Defendants acted with deliberate indifference to his serious medical needs. (Docket entry #2)  Because Mr. Jackson did not attribute any unconstitutional conduct to either Defendant Drummond or Defendant Griffin in his original complaint, the Court instructed him to file an amended complaint to further explain his constitutional claims against those Defendants. (#4)  After Mr. Jackson filed his amended complaint, the Court determined that he had stated deliberate-indifference claims against Defendants Bland, Drummond, and Griffin. (#6)

Defendant Griffin, whose only involvement was responding to Mr. Jackson's grievances, moved for dismissal. (#13)  The Court granted Defendant Griffin's motion. (#22)  Defendants Bland and Drummond have now moved for summary judgment. (#33) Mr. Jackson has also moved for summary judgment. (#39)  The Defendants have responded to Mr. Jackson's motion for summary judgment. (#40)  The Court will

consider Mr. Jackson's motion for summary judgment as both a motion and as a response to the Defendants' motion for summary judgment.

## II. Analysis

### A. Standard

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no real dispute about the facts that are important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the burden of proving that all important facts are undisputed. Once the moving party has come forward with evidence showing that all material facts are undisputed, the responding party must meet proof with proof.

### B. Deliberate-Indifference Standard

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and is prohibited by the Eighth Amendment to the United States Constitution. *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a deliberate-indifference claim, a plaintiff must plead facts showing that he suffered from an objectively serious medical need and that the defendants knew of the need, yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). In this context, a "serious medical need"

is one that has been diagnosed by a doctor as requiring treatment, or a need that is so apparent that a layperson would easily recognize the need for a doctor's attention. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

Defendants can be held liable only if they "actually knew of but deliberately disregarded" an inmate's serious medical need. *Id*. This showing requires a mental state "akin to criminal recklessness." *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). This means that Mr. Jackson must show "more than negligence, more even than gross negligence." *Fourte*, 746 F.3d at 387 (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Stated another way, to prevail on this claim, Mr. Jackson must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

   C. Mr. Jackson's Motion for Summary Judgment

In his motion for summary judgment, Mr. Jackson argues that the Defendants should be found liable as a matter of law for failing to adequately treat him for swelling and pain in his knees, primarily his right knee. Mr. Jackson apparently has had swelling and pain in his knees since mid-2013. His complaint in this lawsuit, however, concerns treatment beginning on April 16, 2015, when he went to the infirmary complaining of bilateral leg swelling and pain. He alleges that the Defendants' treatment did not resolve

the problem with his legs, and he believes Defendants have missed the mark by failing to focus on his circulatory problems.

In support of his motion, Mr. Jackson notes that he was issued "special medical authorizations" on June 25, 2016. He invites the Court to infer that the Defendants issued the special authorizations only after he filed this lawsuit, that is, after months of providing "meaningless medical care." He concedes, however, that this latest treatment "has not helped" either.

The medical records show that Mr. Jackson has received medical care for swollen knees and knee pain since the problem first developed, in mid-2013. The Court declines to penalize Defendants for continuing to address Mr. Jackson's knee problems after the lawsuit was filed. The issue here is whether Defendants' treatment of Mr. Jackson's knee problems during the relevant time rose to the high level of a constitutional violation, not the motivation of their subsequent treatment decisions.

D.     Defendant Bland Motion for Summary Judgment

Mr. Jackson alleges that Defendant Bland failed to provide adequate medical treatment for the pain and swelling in his knees when she examined him on April 16, 2015. Medical records show that Defendant Bland examined Mr. Jackson on that date, and noted no change in her assessment from her examination of Mr. Jackson on January 9, 2015. There was no swelling or discoloration of his knees at the time of the

examination, and she noted that there was hair growth on his legs, which, according to Defendants indicated adequate circulation. (#35-2 at p.63;#35-3 at p.2)

Mr. Jackson conceded in his deposition that he did not have any problem obtaining pain medication when needed during the time relevant to this lawsuit. (*Id*. at p.38) In addition, he testified that he had been examined by an orthopedic specialist in 2013 for his knees problems and that he had undergone two x-ray examinations in November of 2015. (*Id*. at pp.34-36, 48) Both x-ray examinations apparently revealed normal results.[1] (*Id*. at p.35, 48)

Mr. Jackson has not had a job assignment at the ADC since his arrival there because of his health problems and testified that he has no reason to leave his cell, except for yard-call one or two times a month. (*Id*. at p.38-39, 43) He concedes that he is able to walk and use the stairs. When he lies down, the swelling in his legs resolves. (*Id*. at pp.43-44)

Defendants attach the affidavit of Dr. Jeffrey Stieve to their motion for summary judgment. (#35-3) According to Dr. Stieve, Defendant Bland provided Mr. Jackson with appropriate care and treatment for his medical conditions. (*Id*. at p.2)

Based on the record before this Court, Defendant Bland did not act with deliberate indifference to Mr. Jackson's medical needs. Nothing in the record indicates that

---

[1] Mr. Jackson testified that he never saw the actual results of the November 2015 x-rays, but stated that "they were negative, according to them." (*Id*. at p.48)

Defendant Bland's state of mind in her treatment of Mr. Jackson was akin to "criminal recklessness." See *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 884-85 (8th Cir. 2009).

Mr. Jackson obviously disagrees with some of the treatment decisions providers made, but this disagreement does mean that the care he received was constitutionally inadequate. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). He has received medications for his knee problems, as well as extra blankets to elevate his legs. He is not required to work, so he is free to lie down whenever he needs to do so. This alleviates the swelling, according to Mr. Jackson.

Mr. Jackson has failed to come forward with evidence showing that Defendant Bland deliberately ignored his medical needs. She did not focus on Mr. Jackson's circulatory problems, as he believes she should have. She apparently had cause not to focus on poor circulation as a cause of Mr. Jackson's knee problems, but even if she was wrong in her assessment, Mr. Jackson would not prevail on his deliberate indifference claim again her.

E.   Defendant Drummond

Mr. Jackson's sole claim against Defendant Drummond is that Defendant Drummond discontinued his bottom-tier prescription that had ensured Mr. Jackson's assignment to a cell on the first floor of the Unit. At his deposition, Mr. Jackson testified that he was, in fact, assigned to a first-tier cell for his entire time at the Maximum

Security Unit. Even if Defendant Drummond was wrong in discontinuing the script, the decision had no adverse effect on Mr. Jackson. (#35-2 at pp.31-32)

Mr. Jackson does say that, after his transfer to the Varner Unit, he was assigned to the second tier. He conceded in his deposition that he has never filed a grievance about being assigned to the second tier at the Varner Unit, and in any event, he only leaves his cell once or twice a month for yard call. (*Id*. at p.43) Moreover, in October 2013, after he had begun experiencing problems with his knees, he had requested that the bottom-tier script be revoked so that he could change cell blocks. (*Id*. at p.37) He testified that he thought that using the stairs could be good exercise for his knees. (*Id*.)

As noted, Dr. Jeffrey Stieve's testimony that "the medical care and treatment provided to Mr. Jackson was appropriate and satisfactory for his complaints" (#35-3 at p.3) This includes Defendant Drummond's decision that the first-tier script was no longer medically necessary. Based on the evidence in the record, no reasonable fact-finder would conclude that Defendant Drummond acted with deliberate indifference to Mr. Jackson's health and safety by discontinuing the first-tier script. Based on Mr. Jackson's own testimony, Defendant Drummond's failure to renew his first-tier script had virtually no effect on his life at the Maximum Security Unit. For this reason, Mr. Jackson's claims against Defendant Drummond also fail as a matter of law.

### III.     Conclusion

The Defendants' motion for summary judgment (#33) is GRANTED. Mr. Jackson's motion for summary judgment (#39) is DENIED. Claims against Defendants Bland and Drummond are DISMISSED, with prejudice, and the Clerk is directed to close the case.

IT IS SO ORDERED, this 5th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE